**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 12-cv-03255-MSK-MEH

**INFONOW CORPORATION**, doing business as Channelinsight,

    Plaintiff,

v.

**ZYME SOLUTIONS, INC.**,

    Defendant.

---

**OPINION AND ORDER SUSTAINING OBJECTIONS AND GRANTING
MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to Objections by both the Plaintiff ("Infonow") **(# 38)** and Defendant ("Zyme") **(# 39)** to the April 29, 2013 Recommendation **(#35)** of the Magistrate Judge that Zyme's Motion to Dismiss **(# 7)** be granted, and the parties' respective responses **(# 41, 43)** to those Objections; and Infonow's Motion for Leave to File an Amended Complaint **(# 40)**, Zyme's response **(# 42)**, and Infonow's reply **(# 44)**.

## FACTS

Infonow's Complaint **(# 1)** is a bare-bones affair, asserting simply that it owns United States Patent number 8,296,258, covering "Automated Channel Market Data Extraction and Transformation," and asserts that Zyme has infringed that patent by selling "channel data solutions products" that infringe on the patent. It asserts a single claim for patent infringement.

Zyme moved **(# 7)** to dismiss the Complaint, arguing: (i) the Court lacked personal jurisdiction over Zyme, due to its lack of contacts with the State of Colorado; (ii) the patent itself is invalid because it discloses nothing but an unpatentable "abstract idea"; and (iii) the Complaint

fails to meet the pleading standards required of patent claims under the form pleading used for such actions.

The Court referred the matter to the Magistrate Judge for a recommendation. On April 29, 2013, the Magistrate Judge issued the instant Recommendation **(# 35)**, finding that: (i) Zyme purposefully directed its activities at the State of Colorado by soliciting a customer (Trimble) in Colorado, and that Infonow's claims arise out of such activities; (ii) Infonow is only required to plead those facts called for by the "Form 18" form pleading in patent cases, not to provide the type of detail necessary in other civil pleadings; (iii) Infonow's Complaint adequately identifies the patent at issue and a limited scope of Zyme's products that allegedly infringe; (iv) Infonow failed to adequately allege that Infonow gave Zyme notice of the alleged infringement, requiring dismissal of the Complaint on Rule 12(b)(6) grounds; (v) that Infonow should be given leave to amend the Complaint to remedy this defect; and (vi) the record is insufficiently complete for the Court to assess Zyme's invalidity argument, and that matter should be taken up at a later stage of the litigation.

Both sides filed timely Objections to the Recommendation pursuant to Fed. R. Civ. P. 72(b). Infonow's Objections **(# 38)** argue that the Magistrate Judge erred in concluding that the failure of the Complaint to allege that Infonow gave prior notice to Zyme of the infringement was a pleading defect requiring dismissal is "against the weight of federal authority." Infonow notes, however, that if the Court is inclined to adopt the Recommendation, it should consider Infonow's separately-filed Motion for Leave to Amend **(# 40)** the Complaint. Zyme's Objections **(# 39)** argue that the Magistrate Judge erred in various respects: (i) his finding Zyme's contact with Trimble employees in Colorado was significant, insofar as Trimble itself is a citizen only of California; (ii) the minimal contacts that Zyme had with Trimble's Colorado

employees was a sufficient enough contact to permit the exercise of jurisdiction; (iii) the record was sufficient to demonstrate that the claims herein arise out of the contacts Zyme had with Trimble, insofar as that fact is not established by a person with personal knowledge; (iv) that no leave to amend the Complaint should be granted because Infonow has not independently given notice of infringement to Zyme prior to this action, as required by law; and (v) the Court should reach the invalidity argument.

## ANALYSIS

### A. Standard of review

The Court reviews the objected-to portions of the Magistrate Judge's Recommendation *de novo*. Fed. R. Civ. P. 72(b).

### B. Personal jurisdiction

Because the Court's jurisdiction over Zyme must be established before the Court can turn to any of the remaining issues, the Court will address that issue first. For the reasons set forth below, the Court finds that it lacks personal jurisdiction over Zyme.

#### 1. Applicable law

The parties do not dispute the Magistrate Judge's recitation of the governing standards for purposes of determining personal jurisdiction. Although the claim at issue here arises under a federal statute governing patents, that statute contains no particular provisions governing service of process, and thus, Fed. R. Civ. P. 4(k)(1)(A) requires that the Defendants here be "subject to the jurisdiction of a court of general jurisdiction" in the State of Colorado. This, in turn, requires the Court to apply Colorado law in assessing whether it has personal jurisdiction over Zyme. Under Colorado law, this Court exercises personal jurisdiction over non-resident Defendants to the maximum extent that principles of due process permit. *Jenner & Block v. District Court*, 590

3

P.2d 964, 966 (Colo. 1979). Thus, the only question presented is whether the exercise of jurisdiction over Zyme comports with principles of due process.

In making that determination, the Court first looks to the extent and nature of Zyme's contacts with the State of Colorado. If those contacts are "continuous and systematic," the Court can exercise general personal jurisdiction over Zyme; if, on the other hand, those contacts are more sporadic or attenuated, the Court may only assert specific jurisdiction over Zyme if those contacts nevertheless sufficient to show both that: (i) Zyme "purposefully directed [its] activities" at residents of Colorado, and (ii) that the injury claimed in the action "arise out of or relate to those activities." *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation,* 297 F.3d 1343, 1350 (Fed. Cir. 2002).

When a defendant seeks dismissal on personal jurisdiction grounds, the plaintiff bears the burden of establishing that personal jurisdiction exists. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue is raised at the outset of the litigation, the Court may elect to conduct a full evidentiary hearing on the question, or may elect to resolve the matter on a preliminary basis, requiring the plaintiff to make only a *prima facie* showing of jurisdiction via affidavits or other written materials.[1] *Id.* In such circumstances, the Court resolves disputed factual contentions in the light most favorable to the plaintiff. *Shrader*, 633 F.3d at 1239.

2. Analysis

With these principles in mind, the Court turns to the specific evidence in the record. It is undisputed that Zyme is a Delaware corporation that maintains a principal place of business in

---

[1] If the plaintiff makes only a contested *prima facie* showing, it will ultimately be responsible at the time of trial to conclusively establish facts sufficient to support personal jurisdiction. *See Richardson v. Fowler Envelope Co.*, 288 F.Supp.2d 1215, 1219 (D. Kan. 2003).

California.² It has no offices, employees, or property in Colorado. From this Court's review of the record, Infonow identifies three potential types of contacts with Colorado that could arguably give rise to personal jurisdiction over Zyme in Colorado: (i) its association with "partners" who are Colorado residents; (ii) its solicitation of a customer, Trimble, in Colorado; and (iii) its association with an entity called Baptie & Company. The Magistrate Judge's Recommendation addressed only the second of these, but the Court finds that a full assessment requires it to address all three.

### a. Partners

Zyme is in the business of offering "channel data solutions." In practical terms, a "channel" is the path by which the supplier of a product distributes that product to the ultimate buyer, usually through a string of intermediary distributors, wholesalers, retailers, and so on. Zyme's business focuses on increasing the ability of the suppliers (who are Zyme's customers) to obtain data and information from the distributors in the channel, thus allowing the suppliers the ability to assess issues such as sales trends and inventory levels. The information at issue is obtained by Zyme from the distributors and retailers – who are referred to as "partners" – analyzed or processed by Zyme, and passed along to Zyme's customers.

Infonow vigorously argues that "Zyme's infringement occurs every week in Colorado, regardless of where Zyme's clients are located," because Zyme transacts business with "thousands of partners," some of whom are <u>may</u> reside in Colorado. The Court emphasizes "may" in the preceding sentence, as Infonow's argument is often based on what <u>might</u> be the case, rather than what the record actually reflects. With the single exception discussed below,

---

² Although Infonow is a Colorado resident, that fact is largely immaterial to the analysis herein, as there is no indication that Zyme directed any business activities towards or otherwise interacted with Infonow prior to the commencement of this suit.

Infonow does not specifically identify any partner who is a Colorado resident. Rather, Infonow relies largely upon supposition as to the extent to which partners have business operations in Colorado. For example, Infonow points to Best Buy, a company that Zyme's CEO admitted in his deposition was one of the partners from whom Zyme collected data. Infonow posits (without actually citing to evidence to demonstrate) that Best Buy "h[as] locations in Colorado."

Even assuming that assertion to be true, it provides little evidence of a contact sufficient to support the exercise of jurisdiction over Zyme in Colorado. The record does not reveal how Zyme interacts with a partner such as Best Buy – *e.g.* whether Zyme contracts directly with the Best Buy to obtain its data; whether it collects Best Buy's data independently (*e.g.* for example, through an agreement with a subcontractor who operates Best Buy's warehouses or point-of-sale systems, though an aggregator, or via Zyme's own data collection methods), whether Best Buy provides the information gratuitously, etc. Even assuming that Zyme and Best Buy have contracted between themselves to supply data to Zyme, the Court still cannot assume that this reflects a contact with the State of Colorado, as the record does not offer any explanation of how this contract is carried out. Speaking purely hypothetically, it may be that Zyme is required to place data collection devices at each and every Best Buy location, in which case, it may be likely that Zyme has had contacts with any Best Buy locations that exist in Colorado. Or it may be that Best Buy itself aggregates the data from all of its locations, and supplies that data to Zyme from a central point – *e.g.* from Best Buy's corporate headquarters – located outside of Colorado. Thus, the mere fact that Zyme may have contacts with a company like Best Buy, and that Best

Buy has locations in Colorado, does not mean that Zyme necessarily has contacts with the State of Colorado.[3]

Infonow also points to Zyme's admission that domestic Colorado companies, such as Arrow Electronics ("Arrow"), are also partners of some of Zyme's customers. Zyme acknowledges that "Arrow . . . provide[s] Customer Data to Zyme at the direction of a Zyme customer." Zyme states that it receives data from more than 3,000 partners, that it receives 163 "feeds" of data "from Arrow Electronics entities around the world," and that "four of these feeds . . . are associated with an Arrow Colorado location." Acknowledging the ambiguity inherent in the passive voice construction "are associated with," the Court will assume that Zyme receives four data streams from Arrow locations in Colorado.

As quoted above, the record indicates that such streams are provided to Zyme by Arrow "at the direction of" one of Zyme's customers. Once again, the record discloses nothing about the particular interaction between Zyme and Arrow: it does not identify any contractual arrangement between the two companies, nor does it reveal whether Zyme controls or directs Arrow's production of the data. If anything, the record suggests that it is Zyme's customer, not Zyme itself, that directs Arrow to provide the data.

The Court cannot say that this is a contact upon which personal jurisdiction may be built. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985), the Supreme Court explained that even the existence of a contract between a resident of the state and the non-resident defendant is insufficient, of itself, to constitute a minimum contact. Rather, it is the quality of the arrangement that must be examined: "parties who reach out beyond one state and create

---

[3] Practitioners of logic will recognize this as the fallacy of the undistributed middle term. To be a valid statement, one would have to include the premise that "contacts with Best Buy constitute contacts with all of Best Buy's locations." Needless to say, nothing in the law or the record supports such a proposition.

<u>continuing relationships and obligations</u> with citizens of another state are subject to regulation and sanctions in the other state." *Id*. (emphasis added).  Here, there is no evidence that Zyme ever "reached out" to Arrow to obtain the data streams; indeed, the record indicates that Arrow provides the data to Zyme based on instructions issued from Arrow's suppliers (that is, Zyme's customers).  Moreover, there is no evidence that Zyme entered into any "continuing relationship or obligation" with Arrow in the course of receiving those streams.  The record is utterly silent as to the nature of Zyme's relationship with Arrow beyond simply receiving the data that Arrow's suppliers instruct it to send to Zyme, and it reveals no evidence whatsoever of any "obligations" that Zyme has to Arrow (or indeed, that Arrow has to Zyme).  If the mere existence of a contract between two parties is not enough to constitute a contact under *Burger King* without evidence of the quality of that contact, the record here, which discloses neither a contract between Zyme and Arrow nor any evidence regarding the qualities of their relationship, is even less sufficient.

Moreover, even assuming that Zyme's contacts with Arrow in Colorado are sufficient enough to warrant further examination, Infonow has not shown that such contacts are "continuous and systematic" enough to permit the exercise of general jurisdiction, nor that the claim of infringement in this case derives from the contacts that Zyme has with Arrow in Colorado, such that specific jurisdiction is present.  As to general jurisdiction, the record reflects that the four data streams emanating from Arrow in Colorado comprise a mere 2.4% of the data streams Zyme receives from Arrow entities from other locations, and that Arrow is but one of the 3,859 partners that provide data to Zyme.  Thus, the record reflects that Zyme's contacts with Arrow in Colorado reflect a miniscule portion of Zyme's business operations, and there are no other indicia of systematic contacts by Zyme with the State of Colorado.  *See e.g. Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (where forum state's contribution to

defendant's business operations amounted to only 2% of defendant's total sales, contacts sufficient to support general jurisdiction were not present).

As to the specific jurisdiction, the skeletal Complaint gives little indication as to which practices by Zyme give rise to the claim of infringement, but a review of the patent at issue reveals that it describes a process by which "channel data collected by a product channel participant and stored in a data warehouse are periodically extracted based on a previously determined template," the data is "transformed" to a specific format," sifted through "rule sets" to exclude unnecessary information, and then "delivered" to the customer.  This Court's review of the patent reveals no claims that require channel data to be obtained from partners according to any particular method.  Rather, the patent's claims begin with the assumption of a "data warehouse" in which such channel data has already been obtained and stored.  Thus, none of Zyme's acts in obtaining channel data from Arrow can be said to give rise to the infringement claim presented here, such that specific jurisdiction could lie.

Accordingly, the Court finds nothing in Zyme's contacts with partners that could give rise to personal jurisdiction over it in Colorado.

### b. Trimble

Zyme' CEO testified to the company having "active discussions" about its services with a potential customer called Trimble Navigation ("Trimble").  Trimble is a California corporation, but has one or more offices located in Colorado.[4]  Zyme acknowledges that "there has been contact between Zyme employees and Trimble employees in Colorado," in the form of a single physical meeting, to discuss the potential customer relationship.  The parties have yet to reach an

---

[4] The record does not reflect Trimble's principal place of business.  In the absence of such evidence, the Court will simply assume that Trimble is a resident of California, and only California.

agreement on whether Trimble will become a customer of Zyme.[5] Zyme's answers to interrogatories acknowledge that it has also "communicated with Trimble Personnel by telephone, email, and in person in California and Colorado," but does not further specify what particular communications took place in Colorado.

The Magistrate Judge found that Zyme's single act of sending representatives to meet with Trimble employees in Colorado was a sufficient contact to support specific jurisdiction.[6] Having carefully reviewed the cases relied upon by the Magistrate Judge in reaching that conclusion, the Court finds them inapposite.

The Court begins with *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1361-62 (Fed. Cir. 2001), which the Magistrate Judge cited for the proposition that a defendant's only visit to the forum state – for a "get acquainted session" before negotiating a contract from outside the state -- was sufficient to confer jurisdiction. Although the facts of *Inamed* do mention the "get acquainted" meeting, the court's reasoning does not turn on the significance of that meeting; indeed, it is barely mentioned in the court's analysis. Rather, the court focused on the fact that the defendant "successfully negotiated four agreements" with the plaintiff, a resident of the forum state, and rejected the defendant's argument that the fact that the defendant conducted

---

[5] Zyme's CEO's testified that "discussions are ongoing to attempt to make Trimble a customer of Zyme . . . but they're not currently a customer." Infonow has supplied an affidavit of its CEO, who states that he was informed by a representative of Trimble that Trimble "had decided to contract with Zyme." This is hearsay – a statement ("Trimble will contract with Zyme"), offered by someone (Infonow's CEO) other than the declarant (the representative of Trimble), offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Thus, the Court declines to accept the hearsay contention that Trimble is indeed an actual (rather than potential) customer of Zyme, and in the absence of contradictory evidence, is required to accept Zyme's representation that Trimble is not a current customer.

[6] This Court summarily rejects any argument by Infonow that Zyme's few demonstrable contacts with Colorado are so "continuous and systemic" as to support the exercise of general jurisdiction over it.

those negotiations remotely (via telephone or mail) from another state did not defeat the agreements' jurisdictional significance. *Id.* at 1361 ("we conclude that Dr. Kuzmak's negotiation efforts, although accomplished through telephone and mail from New Jersey, can still be considered as activities 'purposefully directed' at residents of California. Therefore, the combination of Dr. Kuzmak's infringement letter and his negotiation efforts which culminated in four license agreements with Inamed is sufficient"). Thus, it was the negotiation of (and entry into) several contracts with a resident of the forum state that supported jurisdiction in *Inamed*, not the defendant's participation in a single, in-person "get acquainted" meeting in the forum state. Here, because Zyme's negotiations with Trimble were with a resident of California, not Colorado, *Inamed* provides no meaningful guidance. The only remotely-similar fact – the defendant making a single visit to the forum state for a meeting – warranted no apparent weight in *Inamed*'s reasoning.

Similarly, the court found facts sufficient to support the exercise of jurisdiction in *Deprenyl,* 297 F.3d at 1352, not simply because agents of the defendant visited the forum state, but because the purpose of the visit was to facilitate the negotiation of an agreement with the plaintiff, a resident <u>of the forum state</u>. Thus, like *Inamed*, the conduct at issue there – the negotiations, visits, etc. – were unquestionably directed at the residents <u>of the forum state</u>. Here, Trimble is not a resident of Colorado, and thus, Zyme's efforts to secure a customer agreement with Trimble were actions directed at a resident of California, not Colorado. The mere fact that some of that solicitation occurred in Trimble's offices in Colorado appears to simply be the type of "fortuitous" contact with Colorado that *Burger King* holds insufficient. 471 U.S. at 475. The solicitation occurred in Colorado because the relevant Trimble employees were located there, but Zyme was not "purposefully availing" itself of the privileges of doing business in Colorado

11

(much less "invoking the benefits and protections" of Colorado's laws) by making the pitch to Trimble. The same pitch could just as easily have been delivered to Trimble employees in a different state or a different country, if the relevant employees had been located there instead.

Finally, the Magistrate Judge cited to *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1298 (Fed. Cir. 2009). There, the court was applying Fed. R. Civ. P. 4(k)(2), which required it to examine whether the defendant's minimum contacts with the United States as a whole were sufficient for jurisdictional purposes, not whether the defendant's contacts with any particular forum state were sufficient. *Id.* at 1291-92. Under that standard, the court found that the defendant's activities in the United States included "attendance at [several] trade shows, purchases of parts and a machine, the sale of a product . . . to one customer, and a pair of consultations about product development," and concluded that these were sufficient to support the exercise of specific jurisdiction. *Id.* at 1297. Needless to say, Zyme's activities in Colorado are not nearly of the same quantity or character.

This Court finds *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999), to be more illustrative. There, the plaintiff brought a variety of claims (including patent and state law claims) in Iowa against the defendant, a California resident. The parties had previously attempted to negotiate a license agreement, with representatives of the defendant traveling to Iowa on two occasions during the negotiations, but the efforts were unsuccessful and no agreement was reached. *Id.* at 854. Although the court resolved the issue on other grounds, in *dicta,* it briefly addressed the question of personal jurisdiction over the defendant.[7] Noting that it had no property in Iowa, had "visited the state on only two occasions in the course of

---

[7]  In doing so, the court noted that it had already disposed of the patent issues on other grounds, and thus proceeded to analyze the jurisdictional question using Eighth Circuit law, rather than Federal Circuit law. However, it does not appear that there were substantive differences between the standards being applied.

discussing a potential business arrangement with Amana, upon which the parties never reached agreement," and had engaged in only nationally-directed advertising campaigns, the court "agree[d] with the trial court] that the nature and quality of these contacts are too limited to permit an Iowa court to exercise personal jurisdiction over" the defendant. *Id.* at 857-58. The case here presents an even less-compelling case for the exercise of jurisdiction: in *Amana*, the defendant was at least negotiating to enter into a contract with a resident of the forum state; here, once again, Trimble is a resident of California, and Zyme's attendance at a meeting in Colorado was merely fortuitous.

Accordingly, the Court finds that Zyme's single visit to Colorado is insufficient to constitute a contact that would support the exercise of even specific jurisdiction over it in Colorado.

### c. Baptie

Finally, the Court turns to Zyme's relationship with Baptie. According to Infonow's CEO, Baptie is a "trade association" that maintains an online "Channel Focus Community," designed to facilitate communication among "executives working with channels in the IT and Telecom industries." (The Court assumes that this "community" is available to executives nation- or world-wide, and not specifically focused on Colorado-based executives.) Infonow alleges that Zyme is a "sponsor[ ] and active participant[ ]" in the Baptie community, and that "Zyme's executives regularly present webinars . . . designed to advertise and promote Zyme's solutions to channel sales executives" via the Baptie community. Baptie has a location in Colorado (and one in England), although the record does not clearly indicate Baptie's legal citizenship or residence.

Assuming, without necessarily finding, that Zyme's involvement with Baptie is a purposeful contact with the State of Colorado sufficient to support the exercise of specific jurisdiction (but not sufficiently continuous and systemic to support the exercise of general jurisdiction), the Court nevertheless finds that Infonow has failed to show that Zyme's actions with regard to Baptie are connected to Infonow's claims of patent infringement. The patent act, 35 U.S.C. § 271(a) states that patent infringement occurs when one "makes, uses, offers to sell, or sells any patented invention." Thus, Infonow's claims of patent infringement are connected to Zyme's actions involving Baptie only if those actions involve Zyme "making," "using," "selling," or "offering to sell" a product or service incorporating technology covered by Infonow's patent through Baptie's services. Obviously, Zyme's self-promotion through Baptie does not amount to Zyme "making, using or selling" its allegedly infringing products; at best, the question presented is whether Zyme's promotional efforts via Baptie constitute an "offer to sell" Zyme's infringing products.

An actionable "offer to sell" an infringing product must be of the type that would "meet the traditional contract law definition of that term." *Superior Industries, LLC v. Thor Global Enterprises, Ltd.*, 700 F.3d 1287, 1294 (Fed. Cir. 2012). In other words, it must "communicate a manifestation of willingness to enter into a bargain," such that a prospective buyer's manifestation of "assent to that bargain . . . will conclude it." *Id.* Thus, "communications that describe the allegedly infringing [product] but do not contain any price terms . . . cannot be construed as an offer" that a buyer could simply accept. *Id.*

Here, Infonow points to the various "webinars" presented by Zyme through Baptie, and has provided the printed materials for several of them. The Court's review of those materials reveals nothing therein that could be construed to be an "offer" by Zyme to enter into a contract

14

with a prospective buyer of its services on any stated terms, price or otherwise.  The materials discuss the practice of channel data analysis generally, and address Zyme's products or services only in general outlines, never stating any price terms or other details that would be essential to constitute an offer that a prospective buyer could accept.  Thus, Zyme's promotional actions through Baptie are not, in and of themselves, actions that could be said to constitute infringement of Infonow's patents.  Thus, even if Zyme's contacts with Colorado through Baptie are sufficiently significant, they are unconnected to the claim at issue here and thus, inadequate to support the exercise of specific jurisdiction.

Accordingly, the Court, upon *de novo* review, finds that it lacks personal jurisdiction over Zyme in Colorado, and Zyme's motion to dismiss must be granted.  Accordingly, the Court need not reach the parties' remaining issues.

## CONCLUSION

For the foregoing reasons, Zyme's Objections **(# 39)** to the Recommendation **(# 35)** are **SUSTAINED**.  The Court declines to adopt the Recommendation, and **GRANTS** Zyme's Motion to Dismiss **(# 7)**.  Because the Court lacks personal jurisdiction over Zyme in Colorado, Infonow's Complaint is **DISMISSED** for lack of personal jurisdiction, and the Clerk of the Court is directed to close this case.

Dated this 6th day of August, 2013.

**BY THE COURT:**

_____
Marcia S. Krieger
Chief United States District Judge